UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY COLE and ANNIE
SHIELDS, on Behalf of Themselves
and all Similarly Situated,

       Plaintiffs,

v.

Case No. 16-10642
Hon. Sean F. Cox

Marathon Oil Corp. *et. al.*,

       Defendants.

_____/

**OPINION & ORDER**
**GRANTING DEFENDANTS' MOTION TO DISMISS**

Plaintiffs Gregory Cole and Annie Shields ("Plaintiffs") bring this putative class action against Defendants Marathon Oil Corporation, Marathon Petroleum Corporation, and Marathon Petroleum LP ("Defendants"). Plaintiffs allege that they have suffered damages as a result of Defendants' wrongful emission, release and discharge of contaminants from Defendants' refinery, located in southwest Detroit. Plaintiffs' complaint includes a private nuisance claim, a strict liability claim, and a negligence claim.

This matter is currently before the Court on Defendants' Motion to Dismiss. (Doc. #18, Def.s' Br.). In it, Defendants seek dismissal of Plaintiffs' complaint on the following grounds: (1) Plaintiffs have not stated a plausible nuisance claim; (2) Plaintiffs' nuisance claim is untimely; (3) Plaintiffs have not stated a plausible negligence claim; (4) Plaintiffs' negligence claim is untimely; and (5) there is no stand-alone claim for strict liability or for punitive damages

1

in Michigan.

The parties have fully briefed the issues and the Court entertained oral argument as to the motion on October 20, 2016. The Court shall **GRANT** Defendants' motion because: (1) Plaintiffs' nuisance and negligence claims are time-barred; and (2) because Michigan has not expressly adopted a stand-alone strict liability claim.

## BACKGROUND

### I. Factual Background

This case involves the alleged "past, present and/or continuing" release of toxic pollutants from Defendants' refinery on and around Plaintiffs' residential properties in southwest Detroit. (*See e.g.* Doc. #4, Am. Compl. at ¶ 5, 13, 19, 21, 55-56, 59). Plaintiffs' amended complaint sets forth the following relevant factual allegations.

Defendants operate a refinery located at 1300 S. Fort Street in Detroit, Michigan. (*Id*. at ¶ 1). Plaintiffs are residents of southwest Detroit, owning residential properties on Liebold Street. (*Id*. at ¶ 12-13). Plaintiffs seek to represent a class of other similarly situated individuals who also live near Defendants' refinery.

Plaintiffs allege that the operation of Defendants' Detroit refinery releases sulfur dioxide, hydrogen sulfide, benzene, toluene, methyl ethyl ketone, volatile organic compounds, carbon monoxide, particulate matter and toxic and hazardous substances (collectively, "refinery contaminants") into the residential area where Plaintiffs live. (*Id*. at ¶¶ 1, 4, 24).

Such refinery contaminants have allegedly been linked to asthma, cancer, lung disease, nervous system harm, blindness and other serious illness. (*Id*. at ¶ 68). Plaintiffs also allege that the refinery creates unreasonable noise, odors, vapors and fumes. (*Id*. at ¶ 14-15).

According to Plaintiffs, the refinery contaminants "became airborne or otherwise scattered and travel through the air, environment and subsurface so that persons and properties in the Class Area ..." were and continue to be exposed. (*Id*. at ¶ 25). Plaintiffs further allege that "[t]he exposures, pollution, noise, odors and disturbance caused by defendants' Detroit refinery operations is a blight on the community, deprives plaintiffs of the use and enjoyment of their properties and exposes plaintiffs to toxic and hazardous substances." (*Id*. at ¶ 32).

Plaintiffs allege that they have suffered significant harm, inconvenience, serious annoyance, discomfort, fear of adverse health effects, and destruction of their community as a result of the refinery's operations. (*Id*. at ¶ 55, 62).

Defendants have allegedly failed to safely remove and abate hazardous refinery contaminants and have failed to advise or warn Plaintiffs of the dangers associated with such contaminants. (*Id*. at ¶ 86). Consequently, Plaintiffs have suffered and continue to suffer various economic losses. (*Id*. at ¶ 89).

## II.     Procedural Background

Plaintiffs commenced this putative class action on February 22, 2016. (Doc. #1, Compl.). On March 8, 2016, Plaintiffs filed an amended complaint, seeking "redress from the Defendants for damages suffered by members of the putative Class ... as a result of Defendants' wrongful emission, release , and discharge of" various refinery contaminants. (Doc. #4, Am. Compl.). The following are named as defendants in this action: (1) Marathon Oil Corporation; (2) Marathon Petroleum Corporation; (3) Marathon Petroleum Company LP. (*Id*.).

Plaintiff's amended complaint alleges three Counts against Defendants: Count I - Private Nuisance; Count II - Strict Liability; and Count III - Negligence. (*Id*.). Plaintiffs seek monetary

3

and injunctive relief. (*Id*. at p. 22).

In lieu of filing an Answer, Defendants have filed the instant Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. #18, Def.s' Br.). Defendants seek dismissal of Plaintiffs' nuisance and negligence claims on two grounds: (1) they each fail to state a claim upon which relief may be granted; or, alternatively, (2) they are each barred by the statute of limitations. Defendants seek dismissal of Plaintiffs' strict liability claim, arguing, *inter alia*, that Michigan courts have declined to recognize a separate cause of action in tort for strict liability. Plaintiffs oppose Defendants' motion. (Doc. #22, Pl.s' Resp.).

## STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

Dismissal is appropriate if the plaintiff failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. *Lillard v. Shelby County Bd. of Educ*., 76 F.3d 716, 726 (6th Cir. 1996).

The Sixth Circuit has instructed that at this "early stage," courts should "take into account economic or logistical circumstances that prevent [Plaintiffs] from obtaining evidence supporting [their] claim[s] and adjust the plausibility threshold appropriately to account for these

4

difficulties." *El-Hallani v. Huntington Nat'l Bank*, 623 F. App'x 730, 735 (6th Cir. 2015).

## ANALYSIS

**I.  Defendants' Motion to Dismiss Plaintiffs' Nuisance, Negligence And Strict Liability Claims, Brought Under Michigan Law**

Defendants' Motion to Dismiss asks this Court to dismiss Defendants' nuisance, negligence, and strict liability claims for failure to state claims under Fed. R. Civ. P. 12(b)(6). All three of those claims are brought under Michigan law.

**A.  Challenges to Plaintiffs' Nuisance Claim**

Defendants challenge Plaintiffs' nuisance claim, which is asserted in Count I of the amended complaint. In challenging this count, Defendants make two arguments: (1) that Plaintiffs have failed to plead sufficient facts to establish a nuisance claim; and (2) that Plaintiffs' nuisance claim is barred by the applicable statute of limitations. Because the Court agrees that Plaintiffs' nuisance claim is barred by the applicable statute of limitations, it need not address the parties' arguments as they relate to the sufficiency of the pleadings.

**1.  Statute of Limitations**

Plaintiffs' nuisance claim is subject to a three-year limitations period for actions to recover damages to property. M.C.L. § 600.5805(10). The period of limitations begins to run from the time the claim accrues, which is "the time the wrong upon which the claim is based was done regardless of the time damage results." M.C.L. 600.5827; *see also Marilyn Froling Revocable Living Trust v. Bloomfield Hills Country Club*, 283 Mich. App. 264, 279 (2009). A nuisance claim begins to accrue "when both the act and the injury first occur, that is when the 'wrong is done.'" *Froling Trust*, 283 Mich. App. at 291.

Here, Plaintiffs assert that their nuisance claim is timely because they plead injuries

arising from tortious acts that have occurred within the last three years. (Pl.'s Resp. at 17, 21). Essentially, Plaintiffs are arguing that their nuisance claim necessarily began to accrue within the last three years since Defendants' tortious conduct is ongoing, continuous and alleged in the present tense. (*See* Pl.'s Resp. at 21-22).

Despite these assertions, Plaintiffs fail to identify *when* their nuisance claim first accrued. And while Plaintiffs agree that a nuisance claim begins to accrue when both the act and the injury first occur, Plaintiffs' amended complaint fails to identify a single date in which the act (*i.e.* Defendants' operation of its refinery) and Plaintiffs' incidental injuries first occurred. In short, Plaintiffs do not allege any facts from which the Court can infer that the alleged injuries *first* occurred less than three years ago. Instead, the Court is left to speculate as to when the period of limitations began to run.

And to the extent that Plaintiffs argue that the "continuous and ongoing" nature of Defendants' tortious conduct precludes a statute of limitations problem, Plaintiffs are mistaken. This is because the continuing nature of Defendants' tortious conduct is irrelevant here since Michigan has abolished the continuing wrongs doctrine. *See Froling Trust*, 283 Mich. App. at 288; *Garg v. Macomb Co. Community Mental Health Svs.,* 472 Mich. 263 (2005); *Terlecki v. Stewart*, 278 Mich. App. 644, 6554-55 (2008); *Guastello v. Lafon*, 2014 WL 10588248, at *3 (Mich. App. 2014).

"Under the doctrine, sometimes referred to as the 'continuing wrongs doctrine,' when the nuisance is of a continuing nature, the period of limitations does not begin to run on the occurrence of the first wrongful act; rather, the period of limitations will not begin to run until the continuing wrong is abated." *Froling Trust*, 283 Mich. App. at 280. As explained in *Froling*

*Trust*, however, "*Garg* and its progeny completely and retroactively abrogated the common-law continuing wrongs doctrine in the jurisprudence of [Michigan], including in nuisance and trespass cases." *Id*. at 288.

In an attempt to avoid the consequences of Michigan's abrogation of the continuing wrongs doctrine, Plaintiffs argue that:

> Michigan Courts distinguish between continuous or altogether ***new tortious acts,*** on the one hand, and the ***continual harmful effects from an original, completed act,*** on the other. The latter has been referred to as a 'continuing wrong' and has traditionally been governed by the 'continuing wrongs' or 'ongoing wrongs' doctrine, which served to toll the statute of limitations.

(Pl.s' Br. at 18) (emphasis in original). Plaintiffs conclude that because the amended complaint's allegations are stated in the present tense, Plaintiffs have sufficiently plead injuries arising from Defendants' conduct during the past three years. (*Id*. at 21).

Plaintiffs' argument is flawed. Plaintiffs incorrectly argue that the continuing wrongs doctrine only applies to continuing harmful *effects*, as opposed to a defendant's tortious *acts*. Not surprisingly, Plaintiffs fail to support this proposition with *any* binding and applicable case law. This is because the opposite is true: the continuing wrongs doctrine provides that "[w]here a defendant's wrongful ***acts*** are of a continuing nature, the period of limitations will not run until the wrong is abated; therefore, a separate cause of action can accrue each day that the defendant's tortious conduct continues." *Horvath v. Delida*, 213 Mich. App. 620, 626 (1995) (emphasis added). "'[A] continuing wrong is established by continual tortious *acts*, not by continual harmful effects from an original, completed act.'" *Terlecki*, 278 Mich. App. at 651 (quoting *Horvath*, 213 Mich. App. at 627) (emphasis in original).

It is clear from Plaintiffs' amended complaint, and from Plaintiffs' responsive pleadings,

that the continuing wrongs doctrine would toll the statute of limitations on Plaintiffs' nuisance claim if it remained in force today. For example, Plaintiffs allege that the "private nuisance that Defendants created is a continuing nuisance in that it has continued and remains unabated." (Am. Compl. at ¶ 63). In their response brief, Plaintiffs explain that Defendants' "new *activities* cause new impacts," and that these "present-day, ongoing *acts*" are what give rise to Plaintiffs' nuisance claim. (Pl.s' Resp. at 21). These allegations–Defendants' on-going operation of the refinery–are precisely the type of "continual tortious acts" that fall under the continuing wrongs doctrine. Because the doctrine has been abolished, Plaintiffs' claims are time-barred.

Moreover, Plaintiffs' argument that Michigan courts have differentiated between continued effects and continued acts is misplaced. "[T]he purpose of th[ese] illustration[s] was to show that a continued effect does not fall under the continuing wrongs doctrine..." *Guastello*, 2014 WL 10588248, at *4. For example, the court in *Terlecki* determined that even if the continuing wrongs doctrine was viable–which it was not–it still would not apply because all that remained were the "harmful effects of the completed tortious acts." *Terlecki*, 278 Mich. App. at 656. Accordingly, and contrary to Plaintiffs' assertions, these illustrations were not intended to "show that the doctrine bars continued effects, but not continued acts." *Guastello*, 2014 WL 10588248, at *4.

Thus, while Plaintiffs' amended complaint asserts "continuing and ongoing operations," it wholly lacks facts showing that the alleged nuisance (*i.e.* Defendants' operation of its refinery) is any different than it was outside of the limitations period. As such, the Court shall dismiss Plaintiffs' nuisance claim on the basis that it is time-barred.

    **B.**    **Challenges to Plaintiffs' Negligence Claim**

Defendants challenge Plaintiffs' negligence claim, which is asserted in Count III of the amended complaint. In challenging this count, Defendants make two arguments: (1) that Plaintiffs have failed to plead sufficient facts to establish a negligence claim; and (2) that Plaintiffs' negligence claim is barred by the applicable statute of limitations. The Court agrees that Plaintiffs' negligence claim is time-barred for the same reasons that Plaintiffs' nuisance claim is time-barred.

### 1. Statute of Limitations

Both parties agree that Plaintiffs' negligence claim is subject to the same three-year period of limitations that governs the nuisance claim. A negligence claim accrues on the date that a plaintiff is first harmed as a result of a defendant's negligent act. *See Schaendorf v. Consumers Energy Co.*, 275 Mich. App. 507, 512-13 (2007).

In arguing that the negligence claim is not time-barred, Plaintiffs assert the same arguments advanced in support of their nuisance claim. These arguments fail for the same reasons discussed above. Namely, Plaintiffs fail to allege *when* Defendants' negligence first caused harm to Plaintiffs. Thus, the Court cannot plausibly infer that the negligence claim accrued within the three-year statutory period.

### C. Challenges to Plaintiffs' Strict Liability Claim

Defendants challenge Plaintiffs' strict liability claim, which is asserted in Count II of the amended complaint. In challenging this count, Defendants argue, *inter alia*, that Michigan courts have declined to expressly recognize a separate cause of action in tort for strict liability. Defendants cite *Prentis v. Yale Mfg. Co.*, 231 N.W.2d 176(Mich. 1984) and *Rutherford v. Chrysler Motors Corp.*, 231 N.W.2d 413 (Mich. Ct. App. 1975) for their stated proposition.

9

The court in *Prentis* made it a point to note that Michigan courts have not expressly adopted the doctrine of strict liability. *See Prentis*, 231 N.W.2d at 183 n.23; *Id.* at 184 n.25; *Id.* at 181 n.9 ("Nor do we interpret the decision in *Piercefield* as an adoption of the concept of strict liability in tort"); *see also Rutherford*, 231 N.W.2d at 414 n.1 ("We do not understand the doctrine of strict liability to be a part of Michigan jurisprudence and do not choose to make it such.")

Plaintiffs respond that Michigan courts have only abolished stand-alone strict liability in the context of product liability cases. (Pl.s' Resp. at 24). Plaintiffs contend that "Michigan courts have allowed strict liability claims to proceed in numerous other cases (including environmental)." (*Id.*).

The problem with Plaintiffs' position is that it is made without reference to a *single* case in support. Moreover, while it is true that both *Prentis* and *Rutherford* involved products claims, the language employed in these decisions is not limited to product liability cases. Notably, at oral argument, Plaintiffs' counsel was unable to direct the Court's attention to *any* decision, binding or not, stating otherwise. Thus, the Court dismisses Plaintiffs' stand-alone strict liability claim because it is not a viable claim under Michigan law.

## CONCLUSION & ORDER

For the reasons set forth above, **IT IS ORDERED** that Defendants' Motion to Dismiss is

**GRANTED**. Plaintiffs' Amended Complaint is therefore **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

                                                 S/Sean F. Cox
                                                 Sean F. Cox
                                                 United States District Judge

Dated: October 25, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 25, 2016, by electronic and/or ordinary mail.

                                                 S/Jennifer McCoy
                                                 Case Manager