**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| GREGORY COLE and ANNIE SHIELDS On Behalf of Themselves and all Others Similarly Situated,<br><br>Plaintiffs,<br><br>-against-<br><br>MARATHON OIL CORPORATION, MARATHON PETROLEUM COMPANY LP and MARATHON PETROLUEM CORPORATION,<br><br>Defendants. | Case No. 2:16-cv-10642<br>Hon. Sean F. Cox<br><br>*Document electronically filed.* |

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY REGARDING
PLAINTIFFS' MOTION TO ENTER SCHEDULING ORDER**

Plaintiffs respectfully notify this Court of supplemental authority supporting Plaintiffs' Motion to Enter Scheduling Order. Doc. No. 56. The seven environmental class certification issues addressed in the Sixth Circuit's July 16, 2018 *per curiam* Opinion in *In re Behr Dayton Thermal Prods.* (Case No. 17-3663) are relevant to topics i-iv and xii in Plaintiffs' proposed Scheduling Order. Doc. No 56-3.

Dated:  July 25, 2018

Respectfully Submitted,

/s/   Alyson Oliver
**OLIVER LAW GROUP P.C.**
Alyson Oliver (P55020)
1647 W. Big Beaver Rd.
Troy, MI 48084
Telephone: (248) 327-6556

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served upon all counsel of record in the above-captioned action by operation of Electronic Court Filing system, on this 25th day of July, 2018.

                                         Signature: /s/  Faye Aoraha
                                                  Faye Aoraha

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0139p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

TERRY MARTIN; LINDA RUSSEL, aka Linda Russell; ┐
NANCY SMITH; DEBORAH NEEDHAM, │
               *Plaintiffs-Appellees*, │
│
     *v*. ├ No. 17-3663
│
BEHR DAYTON THERMAL PRODUCTS LLC; BEHR │
AMERICA, INC.; CHRYSLER MOTORS LLC, nka Old │
Carco LLC; ARAMARK UNIFORM & CAREER APPAREL │
INC., │
               *Defendants-Appellants*. ┘

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 3:08-cv-00326—Walter H. Rice, District Judge.

Argued: March 8, 2018

Decided and Filed: July 16, 2018

Before: GILMAN, ROGERS, and STRANCH, Circuit Judges
_____

## COUNSEL

**ARGUED:** Edward A. Cohen, THOMPSON COBURN, LLP, St. Louis, Missouri, for Appellants. Ned Miltenberg, NATIONAL LEGAL SCHOLARS LAW FIRM, P.C., Bethesda, Maryland, for Appellees. **ON BRIEF:** Edward A. Cohen, THOMPSON COBURN, LLP, St. Louis, Missouri, Patrick Morales-Doyle, THOMPSON COBURN LLP, Chicago, Illinois, Nicholas B. Gorga, Khalilah V. Spencer, HONIGMAN MILLER SCHWARTZ AND COHN LLP, Detroit, Michigan, Michael D. Lichtenstein, Nikki Adame Winningham, LOWENSTEIN SANDLER LLP, Roseland, New Jersey, for Appellants. Ned Miltenberg, NATIONAL LEGAL SCHOLARS LAW FIRM, P.C., Bethesda, Maryland, Patrick A. Thronson, JANET, JENNER & SUGGS, LLC, Baltimore, Maryland, Douglas D. Brannon, BRANNON & ASSOCIATES, Dayton, Ohio, for Appellees.

---

# OPINION

---

JANE B. STRANCH, Circuit Judge.  This toxic tort class action case arises from Defendants' alleged contamination of the groundwater in the McCook Field neighborhood of Dayton, Ohio.  Plaintiffs own properties in McCook Field, which is a low-income area surrounding a Superfund site.  They allege that Defendants released volatile organic compounds and other hazardous substances into the groundwater underlying their properties and were deliberately indifferent to the resultant harm.  The district court denied Plaintiffs' motion for class certification under Federal Rule of Civil Procedure 23(b)(3), but certified seven issues for class treatment under Rule 23(c)(4).  Defendants filed a Rule 23(f) petition to appeal the district court's issue-class certification order, and this court granted review.  For the following reasons, we **AFFIRM** the district court's certification decision.

## I.  BACKGROUND

### A.  Factual Background

In 2008, thirty named plaintiffs filed this class action case, which now encompasses 540 properties in the McCook Field neighborhood.  Defendants are four entities incorporated in Delaware and authorized to do business in Ohio:  Behr Dayton Thermal Products LLC; Behr America, Inc.; Chrysler Motors LLC; and Aramark Uniform & Career Apparel, Inc.[1]

Plaintiffs allege that the groundwater beneath their properties is contaminated with a number of known and suspected carcinogenic volatile organic compounds (VOCs).  They contend that Defendants Chrysler and Aramark released these chemicals into the environment over a period of many years while they operated their respective automotive and dry cleaning

---

[1] Plaintiffs initially named several additional entities as defendants, but they have since dismissed their claims against those parties.

facilities.**2** The toxic chemicals seeped from the commercial properties into the groundwater in two separate plumes, which converge south of Aramark's facility.

The Chrysler-Behr Plume encompasses groundwater contamination from the Chrysler-Behr facility. Plaintiffs assert that Defendants Behr and Chrysler have known about the VOC contamination since 2000 but failed to take steps to remediate it or prevent its spread. The United States Environmental Protection Agency (EPA) became involved in 2006, initiated an emergency removal action in 2007, and designated the area as a Superfund site in 2009. According to the EPA, Defendants Behr and Chrysler released trichloroethene (TCE) and other hazardous substances from their facility, which contaminated the groundwater. This contaminated groundwater migrated south to the areas underlying Plaintiffs' properties. In 2006, the EPA conducted testing of the surface overlying the Chrysler-Behr Plume and determined that the "sub-slab" levels of TCE and other VOCs exceeded allowable levels.

The Aramark Plume encompasses groundwater contamination from Aramark's above-ground chemical storage tanks at the facility that the company formerly used for its dry cleaning operations. Aramark used these tanks to store cleaning agents, including tetrachloroethylene (PCE), a VOC. Deposition testimony indicates that Aramark was aware of PCE contamination as early as 1992.

Plaintiffs have access to a municipal water source for drinking, but the contaminated groundwater creates the risk of VOC vapor intrusion in their homes and buildings. Vapor intrusion, in turn, creates the risk that Plaintiffs will inhale carcinogenic and hazardous substances. The EPA described the harm as follows:

> Elevated levels of TCE detected in the indoor air in four homes could harm residents who breathe the indoor air. Potential adverse effects from breathing TCE include immunological effects, fetal heart malformations, kidney toxicity, and an increased risk of developing kidney cancer. Installation of the vapor abatement systems has lowered the concentrations of contaminants to levels that are not expected to result in any adverse health effects. However, installation and operation of the vapor abatement systems are an interim action to mitigate or

---

**2**Chrysler sold its facility, referred to as the Chrysler-Behr Facility, to Behr in 2002. The Chrysler–Behr facility is located just north of Aramark's facility.

> prevent current exposures and do not fully address the contaminated groundwater plume under the neighborhood and the source of contamination at this site.

Plaintiffs explain that "[a]ll of the properties above the Plumes have and will continue to have a risk of toxic vapor intrusion, and approximately half of the buildings that lie above the plumes currently experience severe vapor intrusion." Vapor intrusion in McCook Field structures has caused real harm: At least one school was closed and demolished when vapor mitigation systems were unable to adequately contain the levels of harmful substances in the air.

### B. Procedural History

Plaintiffs originally filed suit in the Court of Common Pleas for Montgomery County, Ohio. Chrysler subsequently removed the action to the United States District Court for the Southern District of Ohio, invoking jurisdiction under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2). The district court consolidated this case with two related actions.

Plaintiffs filed a Master Amended Class Action Complaint in 2015. The operative complaint includes eleven causes of action: (1) trespass; (2) private nuisance; (3) unjust enrichment; (4) strict liability; (5) negligence; (6) negligence per se; (7) battery; (8) intentional fraudulent concealment; (9) constructive fraud; (10) negligent misrepresentation; and (11) civil conspiracy. Plaintiffs sought Rule 23(b)(3) class certification as to liability only for five of their eleven causes of action—private nuisance, negligence, negligence per se, strict liability, and unjust enrichment. In the alternative, they requested Rule 23(c)(4) certification of seven common issues.

The district court determined that although Plaintiffs' proposed classes satisfied Rule 23(a)'s prerequisites, Ohio law regarding injury-in-fact and causation meant that Plaintiffs could not meet Rule 23(b)(3)'s predominance requirement.[3] Accordingly, the district court denied certification of the two proposed liability-only classes. The district court then addressed Plaintiffs' alternate request for issue-class certification under Rule 23(c)(4). It considered whether predominance constitutes a threshold requirement that must be satisfied with respect to

---

[3]Plaintiffs dispute this understanding of Ohio law and have reserved the right to appeal it on a non-interlocutory basis. Importantly, actual injury in this context does not relate to Article III standing but rather to the element of Ohio tort law.

the entire action before a court may certify certain issues, noting that this question has resulted in a conflict between several other circuits. Finding persuasive the so-called "broad view," the district court rejected treating predominance as a threshold requirement and certified the following seven issues for class treatment:

<u>Issue 1</u>: Each Defendant's role in creating the contamination within their respective Plumes, including their historical operations, disposal practices, and chemical usage;

<u>Issue 2</u>: Whether or not it was foreseeable to Chrysler and Aramark that their improper handling and disposal of TCE and/or PCE could cause the Behr-DTP and Aramark Plumes, respectively, and subsequent injuries;

<u>Issue 3</u>: Whether Chrysler, Behr, and/or Aramark engaged in abnormally dangerous activities for which they are strictly liable;

<u>Issue 4</u>: Whether contamination from the Chrysler-Behr Facility underlies the Chrysler-Behr and Chrysler-Behr-Aramark Class Areas;

<u>Issue 5</u>: Whether contamination from the Aramark Facility underlies the Chrysler-Behr-Aramark Class Area;

<u>Issue 6</u>: Whether Chrysler and/or Aramark's contamination, and all three Defendants' inaction, caused class members to incur the potential for vapor intrusion; and

<u>Issue 7</u>: Whether Defendants negligently failed to investigate and remediate the contamination at and flowing from their respective Facilities.

The district court concluded its class certification decision by stating that it would "establish procedures by which the remaining individualized issues concerning fact-of-injury, proximate causation, and extent of damages can be resolved" and noting that any such procedures would comply with the Reexamination Clause of the Seventh Amendment.[4]

       Defendants filed a timely Rule 23(f) petition. They argued that the district court reached the wrong conclusion on the interaction between Rules 23(b)(3) and 23(c)(4) and that, even under the broad view, the issue classes do not pass muster. Defendants also raised Seventh Amendment arguments, citing the district court's mention of a potential procedure involving the use of a Special Master to resolve remaining issues. Plaintiffs cross-appealed, arguing that the

---

[4]Plaintiffs sometimes refer to the district court's certification decision as "conditional." It is true that certification orders may be modified before final judgment, *see* Fed. R. Civ. P. 23(c)(1)(C), but the provision of Rule 23 that provided for conditional certification was removed as part of the 2003 amendments.

district court should have granted their request for Rule 23(b)(3) certification of liability-only classes. A non-oral argument panel of this court granted Defendants' petition and denied Plaintiffs' cross-appeal. *In re Behr Dayton Thermal Prods. LLC*, Nos. 17-0304/17-0305 (6th Cir. June 22, 2017) (order). Our review is therefore limited to the district court's decision to certify issue classes under Rule 23(c)(4).

## II. ANALYSIS

### A. Jurisdiction

The district court properly exercised jurisdiction under CAFA because the value of the case exceeds $5,000,000, at least one Plaintiff is a citizen of a state different from at least one of the Defendants, and no statutory exceptions apply. *See* 28 U.S.C. § 1332(d)(2). This court has jurisdiction pursuant to 28 U.S.C. § 1292(e) and Rule 23(f), which together provide for discretionary appellate review of a district court's interlocutory class certification decision.

### B. Standard of Review

The standard of review for appeals of class certification decisions is set forth comprehensively in *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*:

> A district court has broad discretion to decide whether to certify a class. This court has described its appellate review of a class certification decision as narrow and as very limited. We will reverse the class certification decision in this case only if [the appellant] makes a strong showing that the district court's decision amounted to a clear abuse of discretion. An abuse of discretion occurs if the district court relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment. We will not find an abuse of discretion unless we reach a definite and firm conviction that the district court committed a clear error of judgment.

722 F.3d 838, 850 (6th Cir. 2013) (citations and internal quotation marks omitted). With this standard in mind, we turn to the certification decision in this case.

**C. Issue Classes**

1. <u>Rule 23(b)(3) and Rule 23(c)(4)</u>

As the district court and the parties point out, other circuits have disagreed about how Rule 23(b)(3)'s requirements interact with Rule 23(c)(4). Rule 23(b)(3) permits class certification where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(c)(4) provides that, "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues."

Under what is known as the broad view, courts apply the Rule 23(b)(3) predominance and superiority prongs after common issues have been identified for class treatment under Rule 23(c)(4). The broad view permits utilizing Rule 23(c)(4) even where predominance has not been satisfied for the cause of action as a whole. *See In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006) (permitting issue certification "regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement"); *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) ("Even if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)[] and proceed with class treatment of these particular issues."). In addition to the Second and Ninth Circuits, the Fourth and Seventh Circuits have supported this approach. *See McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 491 (7th Cir. 2012) ("Rule 23(c)(4) provides that 'when appropriate, an action may be brought or maintained as a class action with respect to particular issues.' The practices challenged in this case present a pair of issues that can most efficiently be determined on a class-wide basis, consistent with the rule just quoted."), *abrogated on other grounds by Phillips v. Sheriff of Cook Cty.*, 828 F.3d 541, 559 (7th Cir.), *reh'g and suggestion for reh'g en banc denied*, (7th Cir. Aug. 3, 2016); *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010) ("A district court has the discretion to split a case by certifying a class for some issues, but not others, or by certifying a class for liability alone where damages or causation may require individualized assessments."); *Gunnells v. Healthplan Servs.,*

Case 2:16-cv-10642-SFC-APP ECF No. 64, PageID.946 Filed 07/25/18 Page 10 of 17

No. 17-3663  Martin v. Behr Dayton Thermal Prods.  Page 8

*Inc.*, 348 F.3d 417, 439–45 (4th Cir. 2003) (holding that courts may employ Rule 23(c)(4) to certify a class as to one claim even though all of the plaintiffs' claims, taken together, do not satisfy the predominance requirement).

The Fifth Circuit explained in a footnote what is known as "the narrow view," which prohibits issue classing if predominance has not been satisfied for the cause of action as a whole. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n.21 (5th Cir. 1996) ("A district court cannot manufacture predominance through the nimble use of subdivision (c)(4). The proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole, must satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule that allows courts to sever the common issues for a class trial."). The narrow view has been referenced with tenuous support by the Eleventh Circuit. *See Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1176 (11th Cir. 2010) (rejecting a district court's certification of a class of hospitals suing a health maintenance organization for underpayment but nevertheless recognizing "the long and venerated practice of creating subclasses as a device to manage complex class actions"). But *Castano*'s issue-class footnote has not been adopted by any other circuit, and subsequent caselaw from within the Fifth Circuit itself indicates that any potency the narrow view once held there has dwindled. *See Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 603 (5th Cir. 2006) (noting that bifurcation might serve "as a remedy for the obstacles preventing a finding of predominance" but that the plaintiffs had not made such a proposal to the district court).

Two circuit court decisions have relied on a functional, superiority-like analysis instead of adopting either the broad or the narrow view. *See Gates v. Rohm & Haas Co.*, 655 F.3d 255, 273 (3d Cir. 2011) (evaluating issue certification based on the factors set forth in Principles of the Law of Aggregate Litigation §§ 2.02–05 (2010)); *In re St. Jude Med., Inc.*, 522 F.3d 836, 841 (8th Cir. 2008) (declining to certify issue classes because they "would do little to increase the efficiency of the litigation").

Our Circuit has not yet squarely addressed the interplay between Rule 23(b)(3) and Rule 23(c)(4), *see Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347, 356 (6th Cir. 2011) ("The Sixth Circuit has not yet weighed in on this issue and we do not [do so] at this time . . . ."), but

No. 17-3663           *Martin v. Behr Dayton Thermal Prods.*           Page 9

the case at hand requires us to grapple with the two provisions. An evaluation of the broad approach persuades us of its merits.

First, the broad approach respects each provision's contribution to class determinations by maintaining Rule 23(b)(3)'s rigor without rendering Rule 23(c)(4) superfluous. The broad approach retains the predominance factor, but instructs courts to engage in the predominance inquiry *after* identifying issues suitable for class treatment. Accordingly, the broad view does not risk undermining the predominance requirement. By contrast, the narrow view would virtually nullify Rule 23(c)(4). *See Gunnells*, 348 F.3d at 439–40.

Second, the broad view flows naturally from Rule 23's text, which provides for issue classing "[w]hen appropriate." A prior version of Rule 23 even instructed that, after selecting issues for class treatment, the remainder of Rule 23's provisions "shall then be construed and applied accordingly." Although the Rule no longer contains this sequencing directive, the Advisory Committee made clear that the changes to the Rule's language were "stylistic only." Fed. R. Civ. P. 23(c)(4) adv. comm. n. to 2007 amend. The Advisory Committee has also declined to alter the language of Rule 23(c)(4) to reflect the narrow view or otherwise limit the use of issue classes. *See* Advisory Committee on Civil Rules, *Rule 23 Subcommittee Report* 90–91 (2015), http://www.uscourts.gov/sites/default/files/2015-11-civil-agenda_book.pdf (indicating that the broad approach's dominance reflects the proper understanding of the Rule—"[t]he various circuits seem to be in accord about the propriety of such [issue] treatment 'when appropriate,' as Rule 23(c)(4) now says").

Third, the concomitant application of Rule 23(b)(3)'s superiority requirement ensures that courts will not rely on issue certification where there exist only minor or insignificant common questions, but instead where the common questions render issue certification the superior method of resolution. Superiority therefore functions as a backstop against inefficient use of Rule 23(c)(4). In this way, the broad view also partakes of the functional approach employed in *Gates*, 655 F.3d at 273, and *St. Jude*, 522 F.3d at 841.

In sum, Rule 23(c)(4) contemplates using issue certification to retain a case's class character where common questions predominate within certain issues and where class treatment

of those issues is the superior method of resolution.  *See Nassau*, 461 F.3d at 226; Fed. R. Civ. P. 23(c)(4) adv. comm. n. to 1966 amend.  A requirement that predominance must first be satisfied for the entire cause of action would undercut the purpose of Rule 23(c)(4) and nullify its intended benefits.  The broad approach is the proper reading of Rule 23, in light of the goals of that rule.

2. Application

Although the district court adopted the broad approach, its analysis did not include a robust application of predominance and superiority to the issues it certified for class treatment.  The record nevertheless confirms that the issue classes satisfy both requirements, and this court may affirm for any reason supported by the record.  *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 514 (6th Cir. 2003).

*a. Predominance*

Rule 23(b)(3)'s predominance inquiry asks whether "the questions of law or fact common to class members predominate over any questions affecting only individual members."  To evaluate predominance, "[a] court must first *characterize* the issues in the case as common or individual and then *weigh* which predominate."  2 William B. Rubenstein, Alba Conte, & Herbert B. Newberg, *Newberg on Class Actions* § 4:50 (5th ed. 2010).  The Supreme Court recently explained how this evaluation works:

> An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof.  The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.  When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (alteration, citations, and internal quotation marks omitted).

No. 17-3663          *Martin v. Behr Dayton Thermal Prods.*          Page 11

Here, the district court certified only issues capable of resolution with generalized, class-wide proof. All seven of these issues are questions that need only be answered once because the answers apply in the same way to each property owner within the plumes. Expert evidence will be central to resolving these seven issues, especially Issues 1, 4, and 5.[5] Such evidence will bear on all of the property owners within each plume in the same way. In addition, Issues 1, 2, 3, 6, and 7 turn on each Defendant's knowledge and conduct, which need only be established once for each plume.[6]

The district court's determination that individualized inquiries predominate over the elements of actual injury and causation does not mean that the same individualized inquiries taint the certified issues. To the contrary, the certified issues do not overlap with actual injury or causation. Issue 6, to be sure, includes the word "caused," but whether Defendants created the risk of vapor intrusion is distinct from the ultimate question of whether they caused an actual injury to property owners. That distinction insulates Issue 6 from overlapping with the liability elements that the district court found incompatible with class treatment.

Nor have Defendants identified any individualized inquiries that outweigh the common questions prevalent *within each issue*. For example, although Defendants have disputed the plume boundaries identified by Plaintiffs' expert, they have not argued that the contamination varies within plumes. At oral argument on appeal, Defendants raised the concepts of temporal and locational variation for the first time. Discussing Issue 7, Defendants asserted that the failure to immediately remediate contamination might constitute negligence with respect to a property directly adjacent to one of the facilities, but not with respect to properties located farther away from the facilities. Given that this case concerns many years of sustained contamination in a contained and relatively small geographic area, this argument carries little weight. Accordingly, "the common, aggregation-enabling, issues in the case are more prevalent or

---

[5]Issue 1 concerns each Defendant's role in creating the contamination within their respective plumes; Issues 4 and 5 concern whether contamination from the Defendants' facilities underlies their respective plumes.

[6]Issue 1 concerns each Defendant's role in creating the contamination within their respective plumes; Issue 2 concerns foreseeability; Issue 3 concerns whether Defendants engaged in abnormally dangerous activities; Issue 6 concerns the risk of vapor intrusion; and Issue 7 concerns failure to investigate and remediate.

important than the non-common, aggregation-defeating, individual issues." *Tyson*, 136 S. Ct. at 1045 (quoting 2 *Newberg on Class Actions* § 4:45 (5th ed. 2013)).

What is more, *Tyson* instructs that certification may remain "proper" even if "important matters" such as actual injury, causation, and damages will have to be tried separately. *Id.* The Eighth Circuit's decision in *Ebert v. General Mills, Inc.*, 823 F.3d 472 (8th Cir. 2016), on which Defendants rely, does not indicate otherwise. There, the court found that the district court's certification of a liability class was an abuse of discretion because "even on the certified issue of liability, there are determinations contained within that analysis that are not suitable for class-wide determination." *Id.* at 479. Specifically, the Eighth Circuit stated:

> Adjudicating claims of liability will require an inquiry into the causal relationship between the actions of General Mills and the resulting alleged vapor contamination. This analysis will include many additional considerations beyond the limited inquiry into General Mills' liability. And, even on the certified issue of liability, there are determinations contained within that analysis that are not suitable for class-wide determination. To resolve liability there must be a determination as to whether vapor contamination, if any, threatens or exists on each individual property as a result of General Mills' actions, and, if so, whether that contamination is wholly, or actually, attributable to General Mills in each instance.

*Id.* The district court noted that these same problems arise from Ohio's construction of causation and actual injury, and in fact relied on *Ebert* when denying Plaintiffs' request for certification of two liability-only classes under Rule 23(b)(3). But predominance problems within a liability-only class do not automatically translate into predominance problems within an issue class, and Defendants fail to explain why *Ebert* extends to issue-only classes. Accordingly, their invocation of *Ebert*'s broad cautionary language does not map onto the specific certification order at issue here.

Because each issue may be resolved with common proof and because individualized inquiries do not outweigh common questions, the seven issue classes that the district court certified satisfy Rule 23(b)(3)'s predominance requirement.

### b. Superiority

Rule 23(b)(3)'s superiority requirement asks whether a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." It aims to "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (quoting Fed. R. Civ. P. 23 adv. comm. n. to 1966 amend.). This court's caselaw instructs:

> To determine whether a class action is the superior method for fair and efficient adjudication, the district court should consider the difficulties of managing a class action. The district court should also compare other means of disposing of the suit to determine if a class action is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court. Additionally, the court should consider the value of individual damage awards, as small awards weigh in favor of class suits.

*Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 630–31 (6th Cir. 2011) (citations and internal quotation marks omitted); *see also In re Whirlpool*, 722 F.3d at 861 ("Use of the class method is warranted particularly because class members are not likely to file individual actions—the cost of litigation would dwarf any potential recovery."). Courts also consider the related nonexhaustive factors set forth in Rule 23(b)(3) itself.

Defendants frame all of the Rule 23(b)(3) factors as going to manageability and argue that "[c]ertification would not serve as a superior method for fairly and efficiently adjudicating this controversy because of the numerous, highly individualized inquiries that would be required even after certification." They also contend that some of the issues certified by the district court "can be more easily resolved through the use of discovery devices or stipulations."

Defendants are correct that resolution of the certified issues "will not resolve the question of Defendants' liability either to the class as a whole or to any individual therein." But resolving the certified issues will go a long way toward doing so, and this is the most efficient way of resolving the seven issues that the district court has certified. Defendants' suggestion about discovery devices and stipulations rings hollow given that this case is ten years old and Defendants have yet to agree to such mechanisms.

Although not explicitly engaging in a superiority analysis, the district court correctly noted that issue certification "will ensure that property owners in the McCook Field neighborhood have an opportunity to litigate their claims. By trying these common questions to a single jury, this procedure also saves time and scarce judicial resources." Indeed, the record indicates that the properties are in a low-income neighborhood, meaning that class members might not otherwise be able to pursue their claims. Even if the class members brought suit individually, the seven certified issues would need to be addressed in each of their cases. Resolving the issues in one fell swoop would conserve the resources of both the court and the parties. Class treatment of the seven certified issues will not resolve Defendants' liability entirely, but it will materially advance the litigation. The issue classes therefore satisfy Rule 23(b)(3)'s superiority requirement.

Because the issue classes satisfy predominance and superiority, the district court did not abuse its discretion by certifying them under Rule 23(c)(4).

### D. The Seventh Amendment

Defendants have also raised Seventh Amendment arguments, and the order granting their Rule 23(f) petition contemplated interlocutory review of these constitutional concerns. At this time, however, we find no Seventh Amendment issues.

The district court mentioned the possibility of using a Special Master to resolve the individualized issues remaining after the certified issues have been resolved by a jury. Defendants argue that this procedure runs afoul of the Reexamination Clause of the Seventh Amendment, which provides that "no fact tried by a jury[] shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII. This constitutional argument incorporates the Rules Enabling Act, which states that procedural rules like Rule 23 "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). Plaintiffs respond that the district court was merely hypothesizing about the best procedure and that a properly bifurcated case does not violate the Seventh Amendment.

Plaintiffs have the better of the argument. At this stage, the district court has not formalized any procedures for resolving either the common issues or the remaining

individualized inquiries.  The certification decision outlines one option, but the district court may ultimately find that another procedure better facilitates the fair resolution of Plaintiffs' claims. Because the district court has not settled on a specific procedure, no constitutional infirmities exist at this time.  Moreover, the fact that the district court preemptively raised the potential for Seventh Amendment concerns suggests that it will take care to conduct any subsequent proceedings in accordance with the Reexamination Clause.  And this circuit has confirmed that, "if done properly, bifurcation will not raise any constitutional issues."  *Olden v. LaFarge Corp.*, 383 F.3d 495, 509 n.6 (6th Cir. 2004).  Leading class action treatises agree.  *See, e.g.*, 2 *Newberg on Class Actions* § 4:92 (5th ed. 2010).  Because the district court has yet to select and implement a procedure for resolving Plaintiffs' claims, no Reexamination Clause problems exist at this time.

### III.  CONCLUSION

This case has dragged on for ten years, but the district court's use of Rule 23(c)(4) issue classing took a meaningful step toward resolving Plaintiffs' claims.  Under the broad view, the certification decision did not constitute an abuse of discretion.  Nor, at this time, are any Seventh Amendment problems presented.  We therefore **AFFIRM** the district court's issue-class certification decision and return this case to the district court with the expectation that it be moved expeditiously toward resolution.